UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DIANNA D. TAYLOR,

    Plaintiff,

v.                                                        Case No. 1:25cv77-MW-HTC

LEVY COUNTY
SHERIFF'S OFFICE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dianna Taylor, proceeding *pro se*, has filed an amended complaint under 42 U.S.C. § 1983 against the Levy County Sherriff's Office ("LCSO") and three of its employees, raising claims related to her arrest on December 29, 2022. Doc. 1-2. Defendants have moved to dismiss the amended complaint, arguing it fails to state a claim on which relief may be granted (Doc. 4), and Taylor responded in opposition (Doc. 10). After reviewing the parties' submissions and the relevant law, the undersigned concludes the motion to dismiss should be GRANTED IN PART and DENIED IN PART. Specifically, Taylor should only be allowed to proceed with her Fourth Amendment excessive force claim for damages.

I.  **Background**

Taylor filed this action in state court on December 29, 2024. Doc. 1-1. After Taylor filed an amended complaint, Defendants removed the case to federal court. Doc. 1. Taylor's amended complaint names four defendants: (1) LCSO; (2) Sergeant Jeremy Dean; (3) Deputy Samuel Quincey; and (4) Deputy Alton Horne. The amended complaint sets forth the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

In December 2022, Taylor and her son Dalton lived with Taylor's mother, Dianna Girten. Girten asked Taylor and Dalton to move out due to an incident between Taylor and her brother, Ben Lowe, on December 22. Taylor and Dalton left for a few days for the Christmas holiday and returned to Girten's house on December 29 to retrieve their belongings. When they arrived, Lowe refused to allow them access to the home and Lowe's son screamed at and physically assaulted Dalton. Taylor called the LCSO; Defendants Quincey, Horne, and Dean ("the deputies") arrived at Girten's home but refused to investigate complaints Taylor made about Lowe having a firearm and Lowe's son assaulting Dalton. The deputies also refused to ask Lowe to leave while Taylor and Dalton removed their property.

While inside the family room, Taylor picked up a remote that belonged to her but Girten tried to take the remote from Taylor. Taylor and her mother got into a "minor tugging match" over the remote "with raised voices." Lowe ran into the

house and began falsely shouting that Taylor hit their mother. The deputies entered the home; as they entered the family room a deputy said "it's time to go" and a deputy "instantly tased" Taylor "over the furniture and boxes that separated them." All three deputies began screaming at Taylor "while forcibly pulling her over the furniture and boxes she fell on when tased."

As the deputies removed Taylor, Girten shouted Taylor "never touched her" and "stop." The deputies "forcibly guided" Taylor toward the front door; while doing so, the deputies did not allow Taylor to get her footing and repeatedly slammed her into the wall. "At one point," Taylor, "still being stunned and confused," tried to reach for her son for safety but the deputies "continued to slam [her] around and against the wall while screaming at her." The deputies then "forcibly slammed" Taylor face first into the floor and tased her a second time. The deputies tightly handcuffed Taylor, pulled her up from the floor, and placed her in a patrol car. Taylor asked the deputies to turn on the air conditioning in the car or roll the windows down, but they refused.

EMS arrived to remove the taser probes from Taylor and evaluate her. Taylor requested medical assistance "which they ignored." Taylor asked to be transported to the hospital but the EMS told the deputies "she's fine." The deputies placed Taylor back in the patrol car. Deputy Quincey "recklessly" drove Taylor to the jail without putting a seat belt on her.

As a result of the December 29 incident, Taylor was charged with resisting an officer without violence and aggravated battery on a person 65 years of age or older. Prosecutors declined to file an information and dismissed the charges against Taylor. *See* Levy County Circuit Court Case No. 2022 CF 678.

In November 2023, Taylor filed a complaint with the LCSO regarding the deputies' actions on December 29, 2022. The LCSO dismissed the complaint and cleared "the deputies of all wrongdoing," except for noting the deputies had failed to turn on their body-worn microphones.

Based on the foregoing, Taylor brings a variety of claims against the Defendants. However, Taylor does not clearly identify which provisions of law the Defendants allegedly violated and many of her "claims" are not independent causes of action.[1] The undersigned has liberally construed the amended complaint and concludes she is bringing claims for failure to investigate, false arrest, excessive force, and deliberate indifference. As relief, Taylor seeks: (1) an investigation into the deputies' conduct; (2) disciplinary action for the deputies and LCSO; (3) damages; (4) expungement of the records related to her arrest; (5) an injunction

---

[1] The amended complaint lists the following potential claims: (1) police misconduct; (2) excessive and abusive use of force; (3) abuse of power; (4) false arrest and imprisonment; (5) falsifying police report; (6) falsifying and inflating arrest charges; (7) refusal of medical attention; (8) failure to investigate complaints on scene; (9) traumatic mental and physical stress caused to Taylor; (10) undue financial stress and burden caused to Taylor; and (11) failure of LCSO to conduct an unbiased investigation into complaint filed by Taylor. Doc. 1-2 at 1-2.

Case No. 1:25cv77-MW-HTC

requiring additional training for the LCSO and its employees; and (6) public and written apologies from the Defendants. Doc. 1-2 at 13-14.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must liberally construe Taylor's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. Discussion

### A. The LCSO cannot be sued.

Taylor has named the LCSO as a Defendant but "Florida law has not established Sheriff's offices as separate legal entities with the capacity to be sued." *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) ("[T]he district court did not err by dismissing Faulkner's claim against [the sheriff's office] because [it] is not a legal entity with the capacity to be sued under Florida

law."). Accordingly, the LCSO is not a proper defendant in this action and the claims against it must be dismissed.[2]

### B. Taylor cannot state a claim based on the deputies' failure to investigate complaints she made on December 29.

Taylor alleges the deputies failed to investigate her complaints that: (1) Lowe had a firearm; and (2) Lowe's son had assaulted Dalton. However, these allegations fail to state a claim.

First, to the extent Taylor suggests the deputies violated her constitutional rights by failing to arrest Lowe's son for assaulting Dalton, that claim is meritless because Taylor does not have a judicially cognizable interest in seeing another individual prosecuted. *See Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987) ("[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another.") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Second, Taylor does not have a constitutional right to any type of investigation by law enforcement. *See Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) ("Vinyard has no substantive right of any kind to an investigation of her excessive

---

[2] Taylor alleges the LCSO failed to conduct an adequate investigation into a complaint she filed on November 2, 2023, regarding the deputies' conduct on December 29, 2022. Doc. 1-2 at 12-13. As is explained below, a failure to conduct an adequate investigation does not violate federal or state law in these circumstances. Thus, even if Taylor had brought the claim against a suable entity, it would still be subject to dismissal.

force complaint by the Sheriff's Office, much less one created by the Constitution."); *Jacoby v. PREA Coordinator*, 2017 WL 2962858, at *4 (N.D. Ala. Apr. 4, 2017), *report and recommendation adopted*, 2017 WL 2957825 (N.D. Ala. July 11, 2017) (noting "[t]he failure to investigate the plaintiff's claims in a manner satisfactory to the plaintiff is not a constitutional violation" and "[w]hether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created"). Taylor, therefore, has failed to state a constitutional claim based on the deputies' failure to investigate her complaints.[3]

The allegations also fail to support a claim under Florida law because "[t]here has never been a common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer to make an arrest and to enforce the law." *Everton v. Willard*, 468 So. 2d 936, 938 (Fla. 1985). And "it has been recognized that the negligent conduct of police investigations does not give rise to a cause of action[.]" *Pritchett v. City of Homestead*, 855 So. 2d 1164, 1165 (Fla. 3d DCA 2003); *State v. Kowalski*, 617 So. 2d 1099, 1100 (Fla. 5th DCA 1993) (reversing judgment for plaintiff "for alleged negligent investigation by a staff investigator of the State Attorney's Office which resulted in the institution of

---

[3] Taylor also complains the deputies did not help her by telling her relatives to stay out of her way as she moved boxes. However, the deputies do not have a duty to assist her with moving her property. *See Kowallek v. Prestia*, 329 F. App'x 897, 898 (11th Cir. 2009) (IRS employee "had no legal duty to help [plaintiff] research his suspicions of identity theft, and no law grants [plaintiff] redress for [the employee's] failure to respond to his inquiries").

Case No. 1:25cv77-MW-HTC

criminal charges against the plaintiff … on which he was subsequently exonerated" because "the defendant State Attorney's Office owed no recognized legal duty of care to the plaintiffs arising out of its duty to enforce the laws and protect the public safety"); *see also J.B. By & Through Spivak v. Dep't of Health & Rehabilitative Servs.*, 591 So. 2d 317, 318 (Fla. 4th DCA. 1991) ("a law enforcement officer's duty to protect the citizens is a general duty owed to the public as a whole and absent a special duty to the victim, a duty of care and resulting tort liability to the individual citizen does not exist"). Accordingly, Taylor's failure to investigate claim is subject to dismissal.

### C. Taylor has failed state a false arrest claim.

Taylor also brings a false arrest claim; she alleges she committed no crime and the deputies arrested her "without cause." However, the factual allegations in Taylor's amended complaint show the deputies had at least arguable probable cause to arrest her.

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992) (citation omitted). "The existence of actual probable cause, or arguable probable cause, however, 'at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest.'" *Paulk v. Benson*,

2023 WL 5624537, at *3 (11th Cir. Aug. 31, 2023), *cert. denied*, 145 S. Ct. 200 (2024) (citation omitted); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted); *see also Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("probable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest"). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Id.* (citation omitted). "Whether an officer has probable cause or arguable probable cause … 'depends on the elements of the alleged crime and the operative fact pattern.'" *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (citation omitted).

Here, reasonable officers in the same circumstances and possessing the same knowledge as the deputies could have believed probable cause existed to arrest Taylor for battery.[4] First, Taylor called the deputies to Girten's home because Lowe had created a "volatile situation." Doc. 1-2 at 3. When the deputies arrived "they were informed of the situation" (*id.*), including that Girten had told Taylor and her son to move out, her son had been assaulted, and that everyone had firearms. Taylor also admits she was "upset." *See Davis v. City of Apopka*, 78 F.4th 1326, 1337 (11th Cir. 2023) ("Some of the most volatile circumstances that officers face and some of

---

[4] Under Florida law, the offense of battery occurs when a person: (1) actually and intentionally touches or strikes another person against the will of the other; or (2) intentionally causes bodily harm to another person. Fla. Stat. § 784.03(1)(a).

Case No. 1:25cv77-MW-HTC

the most difficult decisions that they must make are on the scene in domestic violence cases. Probable cause determinations in that context often present special challenges coupled with the need for quick action to sort things out, to get the wounded medical treatment, and to protect everyone's safety."); *Fletcher v. Town of Clinton*, 196 F.3d 41, 50 (1st Cir. 1999) ("Deference to [on-the-spot reasonable judgments made by officers] may be particularly warranted in domestic disputes" because they "require police to make particularly delicate and difficult judgments quickly" and "violence may be lurking and explode with little warning.").

Second, Taylor admits that before arresting her, the deputies heard Lowe screaming, "She hit my mom! She's hitting my mom." Doc. 1-2 at 6; Doc. 10 at 2, 5. While Taylor contends Lowe's statement "was nothing more than a vindictive action," she also admits Lowe's statement was intended "to escalate the already tense situation." Doc. 10 at 2. Lowe's statement in the presence of the officers, made during a volatile and tense domestic dispute, was sufficient to provide the officers with arguable probable cause to arrest Taylor for battery.[5] *See Martin v. Wood*, 648 F. App'x 911, 916 (11th Cir. 2016) (finding statement from plaintiff's sister that plaintiff was mismanaging the funds in their mother's trust sufficient to establish

---

[5] Taylor also admits she and Girten were engaged in a "tugging match" over a remote control. According to the arrest report, the deputies observed the tugging match, but Taylor claims that part of the arrest report was fabricated. Because of that dispute, at this stage, the undersigned did not consider whether that observation also provided the deputies with arguable probable cause.

probable cause); *Llauro v. Tony*, 470 F. Supp. 3d 1300, 1312 (S.D. Fla. 2020) ("The bar [for probable cause] is so low that the Eleventh Circuit has found the statements of a single witness sufficient to establish probable cause.") (citation omitted).

Furthermore, although Taylor claims Girten told the deputies that Taylor never touched her, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed."[6] *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002); *see also Fillyaw v. City Police of Corsicana*, 2023 WL 8242737, at *6 (N.D. Tex. Nov. 1, 2023), *report and recommendation adopted*, 2023 WL 8244042 (N.D. Tex. Nov. 28, 2023) (noting "[n]either an arrestee's protestations of innocence nor a putative victim's inconsistent statements necessarily vitiate probable cause" and "[t]his principle holds 'especially' true 'in a domestic violence situation' where 'stories conflict and recantations happen so frequently'") (citations omitted). Thus, to the extent Taylor's false arrest claim is premised on the deputies' alleged failure

---

[6] Although Taylor alleges the arrest report Deputy Dean completed contains false information and omits other relevant information, Taylor has not cited any authority indicating she can maintain a fabrication-of-evidence claim that is separate from her false arrest claim. *See Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1240 (S.D. Fla. 2013) ("Fabrication or concealment of evidence during an investigation does not itself violate the Constitution."); *see also Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) ("The manufacture of false evidence, 'in and of itself,' … does not impair anyone's constitutional right."); *Watkins v. Session*, 2021 WL 663762, at *10 (S.D. Fla. Feb. 19, 2021) ("[I]n the Eleventh Circuit, a fabrication-of-evidence claim is really just a species of malicious prosecution.").

Case No. 1:25cv77-MW-HTC

to investigate, their disregard of the denial of the assault, or the fact that they took Lowe at his word, her claim is misplaced. *See Paulk*, 2023 WL 5624537, at *4 (rejecting claim that deputy had no arguable probable cause to arrest because the victims were lying and the deputy arrested plaintiff without first interviewing him) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) ("Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors.")).

      Lastly, Taylor alleges the deputies inflated the charges against her by arresting her for aggravated battery; she claims nothing that allegedly occurred between her and Girten supported the enhanced charge of aggravated battery. However, the "validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Lee*, 284 F.3d at 1195-96 (citation omitted). Thus, whether there was a basis for the deputies to arrest Taylor for aggravated battery is irrelevant since the deputies had at least arguable probable cause to arrest her for simple battery. *See Whittington v. Town of Surfside*, 490 F. Supp. 2d 1239, 1251 (S.D. Fla. 2007) ("[S]o long as probable cause existed to arrest Plaintiff for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges."). Moreover, "the fact that the state later dismisses an arrestee's charges does not negate the existence of probable cause at the time of

arrest." *McDowell v. Gonzalez*, 820 F. App'x 989, 991 (11th Cir. 2020). Accordingly, Taylor has failed to state a false arrest claim against the deputies.[7]

### D. Taylor has stated an excessive force claim.

Next, Taylor alleges the deputies used excessive force during her arrest. Specifically, Taylor alleges that as the deputies entered the room her and her mother were in, they said, "it's time to go" and "instantly tased" her, which caused her to fall on some furniture and boxes. The deputies then pulled Taylor over the furniture and boxes; as Taylor "was struggling to get her footing," the deputies began slamming her into the wall. Taylor tried to reach for her son but the deputies "continued to slam [her] around and against the wall[.]" The deputies "forcibly guided" her toward the front door "without allowing her to get her footing while continuing to slam her into walls." They then "forcibly slammed" Taylor "face first into the floor," tased her again, and tightly handcuffed her.

The deputies do not appear to contest that Taylor has stated a claim for excessive force. Indeed, they state that the "Amended Complaint only states a claim for excessive force." Doc. 4 at 5. Instead, the deputies contend they are entitled to

---

[7] To the extent Taylor seeks to bring a malicious prosecution claim, she cannot do so because she was not arrested pursuant to a warrant. *See Colon v. Smith*, 2024 WL 3898011, at *7 (11th Cir. 2024) ("[A] malicious prosecution claim must be premised on a seizure *pursuant* to legal process, such as a warrant-based arrest or a seizure 'following an arraignment, indictment, or probable-cause hearing.'") (citations omitted).

qualified immunity on the claim because the amended complaint fails to identify a violation of a clearly established constitutional right. The undersigned disagrees.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Myrick v. Fulton Cnty., Ga.*, 69 F. 4th 1277, 1300 (11th Cir. 2023). However, when Taylor was arrested in December 2022, it was clearly established "that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011); *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022) ("using seriously injurious force against 'even a previously fractious arrestee' is unlawful if at the time of arrest he 'was offering no resistance *at all*'") (citation omitted). Given the allegations in the amended complaint, the undersigned cannot say as a matter of law that the deputies are entitled to qualified immunity on Taylor's excessive force claim. *See Brooks v. Miller*, 78 F.4th 1267, 1283 (11th Cir. 2023) (holding *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) "provides clear guidance to officers that they use excessive force if they slam a person into a car during an arrest for a relatively minor offense when the suspect does not endanger anyone else, does not resist, and does not attempt to escape"); *Glasscox v. City of Argo*, 903 F.3d 1207, 1218 (11th Cir. 2018) ("we

conclude that it was clearly established on the date of Mr. Glasscox's arrest that the repeated tasing of a suspect who had ceased any resistance was unlawful").

### E. Taylor has failed to state a deliberate indifference claim.

Taylor also claims the deputies failed to provide her adequate medical attention after she was arrested. "To prevail on a claim of deliberate indifference, plaintiffs 'must satisfy both an objective and a subjective inquiry' and must establish a 'necessary causal link' between the challenged conduct and their injuries." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citations omitted). The objective inquiry asks whether the plaintiff "suffered a deprivation that was, 'objectively, sufficiently serious.'" *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective inquiry requires a plaintiff to demonstrate the defendant exhibited deliberate indifference; to do so, the plaintiff must show the defendant: "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" under criminal law. *Stalley*, 124 F.4th at 1283.

Here, Taylor has not alleged facts to support either the objective or subjective component of a deliberate indifference claim. For the objective component, Taylor must demonstrate she had a serious medical need. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention; in either instance, the medical need must be one that, if left unattended, poses a substantial risk of serious harm. *Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1188 (11th Cir. 2020).

Taylor asserts she had "a chronic producing cough and fever" before her arrest on December 22 and planned to go to urgent care after she retrieved her property. Doc. 1-2 at 8. After Taylor was taken into custody, she says she was coughing and having trouble catching her breath. These allegations, however, are not sufficient to show Taylor had a serious medical need. First, if Taylor had a serious medical need, it would not make sense to travel to her mother's house and proceed to move boxes before seeking medical attention. *See Daniel v. U.S. Marshall Service*, 188 F. App'x 954, 962 (11th Cir. 2006) ("Daniel's assertion that he had a serious medical need is directly contradicted by the fact alleged in his complaint that, after his release from custody the same day on which the vehicle incident occurred, Daniel did not seek medical treatment for his injuries even though he was completely free to do so."). Second, a cough and fever are not conditions that a lay person would easily recognize as requiring a doctor's attention. Moreover, there are no allegations indicating these conditions posed a substantial risk of serious harm if left unattended.

In addition, Taylor's allegations do not show the deputies knew Taylor was at risk of serious harm and disregarded that risk by engaging in conduct that was reckless under criminal law. After Taylor was arrested, the deputies called EMS to

Case No. 1:25cv77-MW-HTC

come assess her. The EMS personnel removed the taser probes from Taylor and evaluated her. Although Taylor asked for medical assistance and to be taken to the hospital, EMS told the deputies that Taylor was fine. Thus, the deputies: (1) allowed EMS to assess Taylor at the scene of the arrest; and (2) relied on the judgment of medical professionals that Taylor did not require additional treatment. Accordingly, Taylor has not shown the deputies acted with deliberate indifference to her medical needs. *See Kuhne v. Fla. Dep't of Corr.*, 618 F. App'x 498, 507 (11th Cir. 2015) ("When a lay person is accused of deliberate indifference, the plaintiff must present evidence that her situation was so obviously dire that [the] lay officers must have known that a medical professional had grossly misjudged the plaintiff's condition.") (cleaned up and citations omitted); *Lynch v. Jackson*, 478 F. App'x 613, 619 (11th Cir. 2012) ("Prison officials who rely on medical personnel for the clinical determinations lack the requisite knowledge for deliberate indifference, absent evidence that clinical determination were unreliable."); *Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) ("supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care"). Furthermore, Taylor has not alleged the deputies' failure to provide immediate treatment exacerbated her condition or resulted in any injury.[8]

---

[8] Likewise, the allegations that Taylor was "recklessly" driven to the jail without a seat belt and without the windows being rolled down are not sufficient to establish a violation of the

## F. Taylor cannot obtain all the relief she requests.

Taylor seeks a variety of relief, but most of it cannot be obtained through this civil action. First, the Court lacks the authority to: (1) order federal or state officials to investigate the deputies' conduct; or (2) discipline the deputies or the LCSO. *See Logan v. Hall*, 604 F. App'x 838, 841 (11th Cir. 2015) ("The district court also correctly concluded that it was without authority to order an investigation to the criminal acts alleged in the complaint, since that responsibility is entrusted to the executive branch of the government and not the judiciary.") (citation omitted); *Craig v. Fisher*, 2017 WL 3492571, at *3 (M.D. Fla. Aug. 15, 2017) ("[T]he Court does not have the authority to direct the termination of FDOC's employees.").

Second, because the deputies are not alleged to be records custodians or responsible for training within the LCSO, and the Court cannot issue injunctions against nonparties, it could not order the deputies to expunge Taylor's arrest record or provide "increased and extensive job training for all law enforcement officers and administration within the" LCSO. *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1304 (11th Cir. 2012) ("It is well recognized that courts may not enter injunctions against persons or entities that were not party to the litigation before them."). Moreover, it is doubtful a federal court has the power to order state officials to expunge an arrest

---

constitution, particularly since the arrest occurred in the winter. In addition, to the extent Taylor claims the deputies' conduct was negligent, the deputies may not be held personally liable for negligent acts that occurred within the scope of their employment. *See* Fla. Stat. § 768.28(9)(a).

record under these circumstances. *See Carter v. Hardy*, 526 F.2d 314, 315 (5th Cir. 1976) ("[T]he Court's privilege to expunge matters of public record is one of exceedingly narrow scope. … Public policy requires here that the retention of records of the arrest and of the subsequent proceedings be left to the discretion of the appropriate authorities.") (citation omitted).  And an injunction requiring "increased and extensive job training" does not meet the specificity requirements of Fed. R. Civ. P. 65(d).  *See* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999) ("This specificity requirement is necessary 'to protect those who are enjoined by informing them of what they are called upon to do or to refrain from doing in order to comply with the injunction or restraining order.'") (citation omitted).

Lastly, the Court does not have the power to order the Defendants to apologize to Taylor. *See Hall v. Alabama*, 2010 WL 582076, at *10 (M.D. Ala. Feb. 18, 2010) ("This Court's powers to grant relief are limited and it lacks jurisdiction to order any of the Defendants to apologize to the Plaintiffs."). Based on the foregoing, Taylor is limited to pursuing damages in this action.

Accordingly, it is RECOMMENDED:

1.  That the Defendants' motion to dismiss (Doc. 4) be DENIED as to Taylor's Fourth Amendment excessive force claim against Deputies Quincey, Horne, and Dean for damages.

2.  That the Defendants' motion to dismiss (Doc. 4) be GRANTED as to all non-excessive force claims against the deputies, as well as the claim against the LCSO, and those claims be DISMISSED WITH PREJUDICE.

3.  That Deputies Quincey, Horne, and Dean be required to file an answer to the excessive force claim in Taylor's amended complaint within fourteen (14) days.

At Pensacola, Florida, this 29th day of May, 2025.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.